# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 18-04006-01-CR-C-BCW |
| **JAMES ANTHONY GUTHRIE, III**, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Timothy A. Garrison, the United States Attorney for the Western District of Missouri and undersigned counsel, respectfully submits this sentencing memorandum in the above captioned matter, set for a sentencing hearing on May 14, 2019. For the reasons set forth below, the Government and the Defendant make a joint recommendation that the Court sentence the defendant, James Anthony Guthrie, III, to 180 months' imprisonment. The Government also recommends lifetime supervised release.

### I. BACKGROUND

On November 27, 2018, Guthrie pled guilty to Count 1 of a 2-count indictment, which charged attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Pursuant to the plea agreement, Guthrie agreed to the following facts:

> On September 5, 2017, a detective with the Lebanon Police Department and the Lake Area Cyber Crimes Task Force received four (4) Cyber Tip (CT) reports from the National Center for Missing and Exploited Children (NCMEC) regarding child enticement.
>
> The information contained in one of the CT reports was concerning a now 16-year-old female out of Tampa, Florida, FV1, communicating with a 36-year-old white male from Missouri via Facebook Messenger, later identified as JAMES ANTHONY GUTHRIE, III. It appeared from the excerpts of the communication

between the GUTHRIE account and FV1's account that the subjects had met in person and had engaged in sexual activity in a hotel room in either Florida or Greensboro, Georgia.

Further, in the chat excerpts starting on November 18, 2016, FV1 sent several images and videos to GUTHRIE that were pornographic in nature, including one sent on November 27, 2016, which depicted FV1's genitals. The chats talked about FV1 meeting GUTHRIE at a hotel.

The detective was able to search the IP addresses associated with GUTHRIE from the CT report to determine the IP address was assigned to a residence where JAMES ANTHONY GUTHRIE, III resided.

On December 18, 2017, an HSI Special Agent (SA) made an application for and received a federal search warrant for the residence located at GUTHRIE's residence. On December 18, 2017, the detective and SA executed a federal search warrant at the GUTHRIE residence.

The SA made contact with GUTHRIE at the residence. The SA and the detective read GUTHRIE his *Miranda* rights, and GUTHRIE signed the form agreeing to speak with law enforcement. GUTHRIE explained he used his parents' residence as his mailing address and stayed there often. GUTHRIE explained he used the Charter Internet service at his parents' residence. GUTHRIE used his cell phone and in the past used a laptop to chat with people via the internet. GUTHRIE explained he mainly used an application called KIK to chat with other people. GUTHRIE explained he had chatted with females as young as 13 and 14 years old using KIK. GUTHRIE explained that the SA would find things on his cellular phone that he would not like, explaining it would be nude images of underage girls.

GUTHRIE explained he had chatted with FV1 who was from North Carolina. GUTHRIE explained he used his cell phone number to communicate with FV1. At first, GUTHRIE explained he had never met FV1, and then later confirmed he did meet her at a hotel Thanksgiving of 2016 in Greensboro, North Carolina, but did not have any sexual contact. GUTHRIE later explained he physically met FV1 on three occasions and had sexual intercourse with her on two occasions. Guthrie explained the three meetings were as follows: Marriott Hotel in Greensboro, North Carolina; Holiday Inn in Mebane, North Carolina; and the Hampton Inn in Mebane, North Carolina.

GUTHRIE explained he used his credit card to buy FV1 clothes, food including ordering her pizzas and school lunches, and paid her cellular phone bill. GUTHRIE received nude images of FV1 via the internet. GUTHRIE explained he knew it was illegal to receive the nude images of FV1 and to travel to another state and have sexual intercourse with FV1.

2

On December 18, 2017, GUTHRIE signed a consent to search form allowing law enforcement to obtain his HP laptop, a laptop computer hard drive from another computer, and three DVD-R disks from his residence. GUTHRIE admitted some of the items might contain child pornography. During a post-*Miranda* audio-recorded second interview on December 18, 2017, GUTHRIE admitted to buying FV1 jewelry, a ring with a little heart and a necklace with a crown.

On December 19, 2017, GUTHRIE called the SA again, stating he had more information and wanted to talk further about his contact with FV1. GUTHRIE explained he met with FV1 on five different occasions in North Carolina and had sexual intercourse with her each time. The detective and the SA met with GUTHRIE at his residence. GUTHRIE explained the first time he met FV1 was in Burlington, North Carolina, at a Red Roof Inn. GUTHRIE explained the first meeting would have been either the end of 2015 or early 2016. GUTHRIE explained they spent one night together and had sexual intercourse. FV1 would have been 15 years old.

GUTHRIE explained he was not sure of the order or the dates of the next three meetings with FV1. GUTHRIE explained he met her at hotels, twice in Mebane and once in Greensboro, North Carolina, as he had stated in a previous interview. GUTHRIE explained the last time he met with FV1 was at a hotel in Durham, North Carolina, the first day, then the second day was in a little town north of Durham. GUTHRIE explained that, each of the five times he met FV1 at the hotels, he had sexual intercourse with her. GUTHRIE explained he would go pick her up from school or at her house. GUTHRIE explained that, one time her dad brought her to a hotel, but he never met him.

GUTHRIE stated he communicated about sexual matters with FV1 both while he was in Missouri and while in North Carolina. He stated he only traveled to see FV1 in order to have sexual intercourse when he was already in North Carolina for work. GUTHRIE spoke with FV1 and made plans to visit her while he was in Missouri. While in Missouri, GUTHRIE engaged in the following communication over Facebook Messenger with FV1 on December 31, 2016:

| | |
|---|---|
| GUTHRIE: | I will be back out there the 7th or 8th. Then we will start planning a visit. |
| GUTHRIE: | I wanna see u and hold you and kiss u |
| FV1: | you will |

On January 4, 2017, GUTHRIE engaged in the following communication over Facebook Messenger with FV1:

| | |
|---|---|
| FV1: | Then come |
| GUTHRIE: | I am baby |
| FV1: | you are |

3

GUTHRIE: Friday . . .For work and my baby

The Facebook messages later corroborate that GUTHRIE traveled to North Carolina shortly after the exchange.

Guthrie's Base Offense Level was calculated as a 28 based on a violation of 18 U.S.C. § 2422(b).

The United States Probation Office calculated the Sentencing Guidelines as follows:

| | |
|---|---|
| **Base Offense Level: § 2G1.3** | **28** |
| **§ 2G1.3(b)(2)(B)** | **+2** |
| **§ 2G1.3(b)(3)(A)** | **+2** |
| **§ 2G1.3(b)(4)(A)** | **+2** |
| **Acceptance of Responsibility** | **-3** |
| **Total Offense Level** | **31** |

With his Criminal History Category of I, this calculation results in an applicable Guidelines range of 120 to 135 months. Guthrie is also subject to a statutory minimum of 10 years. The Government and the defendant jointly recommend a sentence of 180 months. (PSR ¶¶ 37, 61.)

## II. DISCUSSION

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, Guidelines Manual, § 1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG § 1.1B1(c).

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). Given Guthrie's conduct, 180 months is a reasonable sentence, and is justified under § 3553(a) for the reasons set forth below.

4

*A.     Objections to the PSR*

Guthrie makes no objections which affect the Guidelines calculations.

*Special Condition (a)*

Guthrie objects to special condition (a), which reads the defendant shall "successfully participate in any substance abuse program, which may include urinalysis, sweat patch, or Breathalyzer testing, as approved by the Probation Office, and pay any associated costs as directed by the Probation Office." (PSR ¶ 67(a).) The Government agrees with the Probation and Parole Office in their assessment that Guthrie's prior marijuana use makes this condition reasonably related to the history and characteristics of the defendant.

*Special Condition (c)*

Guthrie objects to the wording of special condition (c), which reads, "the defendant will not associate or have any contact with persons under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation office." (PSR ¶ 67(c).) This condition is not overly restrictive as written, because it is specifically relates to Guthrie's offense conduct and history.

*Special Condition (d)*

Guthrie objects to special condition (d), which reads, "The defendant will neither possess nor have under his/her control any matter that is pornographic/erotic or that describes sexually explicit conduct, violence toward children or child pornography [as described in 18 U.S.C. §§ 2256(2) and (8)], including photographs, images, books, writings, drawings, videos, and electronic material." (PSR ¶ 67(d).) Guthrie states that this condition is erroneously overbroad and vague, and would chill many permissible, and even desirable, types of conduct and expression.

5

"Prohibitions on the possession of pornographic materials are not unusual special conditions, and they have often withstood First Amendment challenges." *United States v. Simons*, 614 F.3d 475, 483 (8th Cir. 2010); *see also United States v. Stults*, 575 F.3d 834, 854-55 (8th Cir. 2009) (upholding, on plain error review, a child pornography defendant's ban on "accessing, viewing, or possessing any pornographic sexually oriented or sexually stimulating materials"); *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) (holding that district court did not abuse its discretion in imposing a ban on "viewing or possessing any form of pornography, sexually stimulating or sexually oriented material"); *United States v. Ristine*, 335 F.3d 692, 694-95 (8th Cir. 2003) (upholding on plain error a ban on possession pornographic materials for a defendant convicted of receiving child pornography). In order to survive Court scrutiny, "inquiry must take place on an individualized basis; a court may not impose a special condition on all those found guilty of a particular offense." *Bender*, 566 F.3d 566, 752 (8th Cir. 2009) (quoting *United States v. Davis*, 452 F.3d 991 (8th Cir. 2006)).

In *Bender*, the Eighth Circuit remanded the case for additional findings of facts and resentencing because the district court's ban against possessing sexually stimulating materials was not based on the "nature and circumstances of the offense and history and characteristics of the defendant." *Bender*, 566 F.3d at 752. In *Simons*, the language was overbroad and overly vague because it prohibited Simons from possessing any material that depicts nudity. The Eighth Circuit found that, "by its terms, it would prohibit Simons from viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all which depict nudity." *Simons*, 614 F.3d at 483. Unlike *Simons*, the language used by the Probation Office in this case is specifically tailored to pornographic/erotic material and is, therefore, not overly vague.

6

Guthrie's case is distinguishable from *Bender* and analogous to the circumstances in *Stults*, *Boston* and *Ristine* in that the prohibition on the possession of pornographic material is based on the nature and circumstances of the offense and history and characteristics of the defendant. Specifically, Guthrie's offense involves enticement of a child, possessing and viewing child pornography, as well as viewing child exploitive material which may be legal to possess, but would contribute to him being a danger to the community. Guthrie admits to using the internet to download pornography of all types, to masturbating to the images of young children, and that he has done so for the past 10 years.

Defense counsel argues that prohibiting possession of legal adult pornography would chill many permissible, and even desirable, types of conduct and expression. However, that argument assumes Guthrie would have the same responses to sexual images and sexual fantasy as do non-offenders. Guthrie has admitted that he has masturbated to images of children being sexually abused by adults. In a paper addressing Sexually Explicit Material as Contraband for Convicted Sex Offenders, Jim Tanner, PhD, discusses how sex offenders respond to sexually explicit material. The research suggests that "sex offenders have different responses to sexual images and sexual fantasy than do non-offenders . . . In general, offenders perceive more deviant undertones and are more aroused to deviant undertones in pornography than are non-offender populations." Jim Tanner, PhD, *Sexually Explicit Material as Contraband for Convicted Sex Offenders*, at *2, http://www.kbsolutions.com/PornContraband.pdf.

Due to the nature of this offense, Guthrie's history of deviant sexual fantasies, hands on offense and the desire to deter him from this conduct in the future, this special condition prohibiting Guthrie's access to sexually explicit material involving adults is not overly broad.

*Special Condition (f)*

Guthrie does not object to this condition, provided the condition states the test and accompanying interview will only be used for treatment purposes and allocation of supervisory resources and attention.  The Government has no objection to this amendment.

*Special Condition (g)*

Guthrie objects to special condition (g), which reads, "The defendant's place of residence may not be within 1,000 feet of schools, parks, playgrounds, public pools, or other locations frequented by children."  (PSR ¶ 67(g).)  This condition is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), involves no greater deprivation of liberty than is reasonably necessary since Guthrie will be required to adhere to sex offender registry requirements, and it is tailored to the nature and circumstances of the offense, Guthrie's history and characteristics, and the deterrence of future criminal conduct in that Guthrie's offense involved a sexual attraction to children.

*Special Condition (k)*

Guthrie objects to special condition (k), which reads, "the defendant shall not maintain or create a user account on any social networking site (i.e. Myspace, Facebook, Adultfriendfinder, etc.) that allows access to persons under the age of 18, or allows for the exchange of sexually explicit material, chat conversations, or instant messaging.  The defendant shall not view and/or access any web profile users under the age of 18."  (PSR ¶ 67(k).)  This condition is reasonably necessary and is tailored to the nature and circumstances of the offense, Guthrie's history and characteristics and the deterrence of future criminal conduct in that Guthrie's offense was perpetrated using Facebook and KIK.

8

### B. *Application of the § 3553(a) Factors*

#### 1. The History and Characteristics of the Defendant

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). Guthrie has a limited criminal history, a single conviction for driving while intoxicated from 2003 from Miller County, Missouri. However, based on his admissions, Guthrie's criminal behavior associated with the sexual exploitation of children has gone undetected for at least 10 years. (PSR ¶ 15.) While Guthrie has maintained close relationships with his parents and his sister Elizabeth, there is no evidence he has maintained an age-appropriate long-term relationship with an adult. (PSR ¶¶ 42-45.) Additionally, even though Guthrie maintained these close familial relationships, he hid his sexual attraction to minors and incest, his online exploitation of minor children, and his travel to North Carolina to engage in sexual intercourse with a 15-year-old female. Guthrie is financially stable, worked seasonally, and owned his own home. However, Guthrie's travel for work and financial stability enabled his abuse of the victim in this case. Based on his history and characteristics, a 180 month sentence is warranted.

#### 2. The Need to Protect the Public from Future Crimes by the Defendant

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), weighs strongly in favor of the 180 month sentence recommended by the Government and the defense. As noted above, Guthrie targeted vulnerable victims in order to satisfy his sexual needs as well as engaged in an online community of like-minded individuals through KIK. It is difficult to determine the extent of Guthrie's conduct because he destroyed evidence of his online sexual exploitation following the arrest of FV1's other abuser. (PSR ¶ 15.) It is clear that Guthrie has a sexual attraction to children and has been unable or unwilling to control

9

his urges in the past. The safety of the public demands that the Court impose a significant sentence and weighs in favor of a 180 month sentence.

### 3. The Nature and Circumstances of the Offense

The nature and circumstances of the offense of conviction, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), and the need to deter other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the Guidelines-range sentence that the Government recommends. Guthrie has plead guilty to attempted enticement of a minor, and initially met the female victim online when she was 14. Guthrie engaged in sexual communications with FV1, groomed her by sending gifts including jewelry, a cellular telephone, food delivery, a life-size teddy bear, shopping trips and nights in a hotel room. When FV1 was 15 years old, Guthrie traveled to engage in sexual intercourse with her on multiple occasions. Guthrie frequently inquired about FV1's sexual abuse inflicted by other adult men, including a request for a video depicting sexual abuse by FV1's father, which he admitted receiving. Guthrie manipulated FV1 and exploited the fact that others had abused her for his own personal gain. Guthrie admitted to communicating with other individuals he believed to be minors in a sexual manner, and to receiving self-produced pornographic images from 13-14 year old females. Guthrie was engaged in this behavior up until the day he HSI agents interviewed him.

However, in light of Guthrie's reprehensible conduct, the Government has agreed to recommend 180 months' imprisonment and to dismiss Count 2 of the indictment because Guthrie has taken responsibility for his actions and has spared FV1 from the re-victimization caused by the process of a jury trial in this case. The risk and danger posed by Guthrie's conduct warrants imposition of a sentence of 180 months.

### 4. Balancing of All § 3553(a) Factors

A 180 month sentence is significant for any first time offender. However, given Guthrie's history of exploiting children and his egregious conduct in this case, as well as the need to protect the public, a prison sentence of 180 months is appropriate in this case. A term of supervised release of eight years is mandatory in this case, and is also warranted by Guthrie's history of recurring drug problems and offenses.

### C. *Recommended Sentence for Monetary Penalties*

Due to Guthrie's inability to pay, the Government is not advocating that a fine or the $5,000 assessment pursuant to 18 U.S.C. § 3014. However, the $100 Special Assessment per count is mandatory and, as a result, $100 must be paid in full by Guthrie no later than the day of sentencing.

### III. CONCLUSION

The Government respectfully suggests that a sentence of 180 months and lifetime supervised release constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

Respectfully submitted,

**Timothy A. Garrison**
United States Attorney

By          /S/

**Ashley S. Turner**
Assistant United States Attorney
Missouri Bar No. 62314

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on May 6, 2019, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

/S/
**Ashley S. Turner**
Assistant United States Attorney